[Crim. No. 15693. Second Dist., Div. Five. Mar. 27, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
EDMUND BEAUCLERC STAPLES, Defendant and Appellant.

## COUNSEL

Lawrence William Steinberg for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Melvin R. Segal, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**REPPY, J.**—Defendant was charged in an information with attempted burglary (Pen. Code, §§ 664, 459). Trial by jury was waived, and the matter submitted on the testimony contained in the transcript of the preliminary hearing together with exhibits. Defendant was found guilty. Proceedings

were suspended before pronouncement of sentence, and an order was made granting defendant probation. The appeal is from the order which is deemed a final judgment. (Pen. Code, § 1237.)

## I. THE FACTS

In October 1967, while his wife was away on a trip, defendant, a mathematician, under an assumed name, rented an office on the second floor of a building in Hollywood which was over the mezzanine of a bank. Directly below the mezzanine was the vault of the bank. Defendant was aware of the layout of the building, specifically of the relation of the office he rented to the bank vault. Defendant paid rent for the period from October 23 to November 23. The landlord had 10 days before commencement of the rental period within which to finish some interior repairs and painting. During this prerental period defendant brought into the office certain equipment. This included drilling tools, two acetylene gas tanks, a blow torch, a blanket, and a linoleum rug. The landlord observed these items when he came in from time to time to see how the repair work was progressing. Defendant learned from a custodian that no one was in the buliding on Saturdays. On Saturday, October 14, defendant drilled two groups of holes into the floor of the office above the mezzanine room. He stopped drilling before the holes went through the floor. He came back to the office several times thinking he might slowly drill down, covering the holes with the linoleum rug.[1] At some point in time he installed a hasp lock on a closet, and planned to, or did, place his tools in it. However, he left the closet keys on the premises. Around the end of November, apparently after November 23, the landlord notified the police and turned the tools and equipment over to them. Defendant did not pay any more rent. It is not clear when he last entered the office, but it could have been after November 23, and even after the landlord had removed the equipment. On February 22, 1968, the police arrested defendant. After receiving advice as to his constitutional rights, defendant voluntarily made an oral statement which he reduced to writing.

Among other things which defendant wrote down were these:

"Saturday, the 14th . . . I drilled some small holes in the floor of the room. Because of tiredness, fear, and the implications of what I was doing, I stopped and went to sleep.

"At this point I think my motives began to change. The actutal [sic] commencement of my plan made me begin to realize that even if I were to succeed a fugitive life of living off of stolen money would not give

---

[1]This is defendant's characterization of what occurred after his initial drilling session. (See partial text of confession, post.)

the enjoyment of the life of a mathematician however humble a job I might have.

"I still had not given up my plan however. I felt I had made a certain investment of time, money, effort and a certain pschological [*sic*] commitment to the concept.

"I came back several times thinking I might store the tools in the closet and slowly drill down (covering the hole with a rug of linoleum square. As time went on (after two weeks or so). My wife came back and my life as bank robber seemed more and more absurd."

## II. DISCUSSION OF DEFENDANT'S CONTENTIONS

 Defendant's position in this appeal is that, as a matter of law, there was insufficient evidence upon which to convict him of a criminal attempt under Penal Code section 664. Defendant claims that his actions were all preparatory in nature and never reached a stage of advancement in relation to the substantive crime which he concededly intended to commit (burglary of the bank vault) so that criminal responsibility might attach.

In order for the prosecution to prove that defendant committed an attempt to burglarize as proscribed by Penal Code section 664, it was required to establish that he had the specific intent to commit a burglary of the bank and that his acts toward that goal went beyond mere preparation. (*People* v. *Buffum,* 40 Cal.2d 709, 718 [256 P.2d 317]; *People* v. *Miller,* 2 Cal.2d 527, 530 [42 P.2d 308]; *People* v. *Anderson,* 1 Cal.2d 687, 689-690 [37 P.2d 67]; *People* v. *Gibson,* 94 Cal.App.2d 468, 470 [210 P.2d 747].)

The required specific intent was clearly established in the instant case. Defendant admitted in his written confession that he rented the office fully intending to burglarize the bank, that he brought in tools and equipment to accomplish this purpose, and that he began drilling into the floor with the intent of making an entry into the bank.

The question of whether defendant's conduct went beyond "mere preparation" raises some provocative problems. The briefs and the oral argument of counsel in this case point up a degree of ambiguity and uncertainty that permeates the law of attempts in this state. Each side has cited us to a different so-called "test" to determine whether this defendant's conduct went beyond the preparatory stage. Predictably each respective test in the eyes of its proponents yielded an opposite result.

Defendant relies heavily on the following language: "Preparation alone is not enough [to convict for an attempt], there must be some appreciable

fragment of the crime committed, *it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter,* and the act must not be equivocal in nature." (Italics added.) (*People* v. *Buffum, supra,* 40 Cal.2d 709, 718.) Defendant argues that while the facts show that he did do a series of acts directed at the commission of a burglary—renting the office, bringing in elaborate equipment and actually starting drilling—the facts do not show that he was interrupted by any outside circumstances. Without such interruption and a voluntary desistence on his part, defendant concludes that under the above stated test, he has not legally committed an attempt. The Attorney General has replied that even if the above test is appropriate, the trial judge, obviously drawing reasonable inferences, found that defendant was interrupted by outside circumstances—the landlord's acts of discovering the burglary equipment, resuming control over the premises, and calling the police.

However, the Attorney General suggests that another test, as set out in *People* v. *Anderson, supra,* 1 Cal.2d 687, 690, is more appropriate: "Whenever the design of a person to commit crime is clearly shown, slight acts in furtherance of the design will constitute an attempt." (Note absence of reference to interruption.) The People argue that defendant's felonious intent was clearly set out in his written confession; that the proven overt acts in furtherance of the design, although only needing to be slight, were, in fact, substantial; that this combination warrants the affirmance of the attempt conviction.

We suggest that the confusion in this area is a result of the broad statutory language of section 664, which reads in part: "Any person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable . . . ." This is a very general proscription against all attempts not specifically made a crime (see e.g., Pen. Code, § 217). The statute does not differentiate between the various types of attempts which may be considered culpable. Reference must be made to case law in order to determine precisely what conduct constitutes an attempt. However, the statute does point out by the words "fails," "prevented," and "intercepted," those *conditions* which separate an attempt from the substantive crime.

An examination of the decisional law reveals *at least two* general categories of attempts, both of which have been held to fall within the ambit of the statute.

In the first category are those situations where the actor does all acts necessary (including the last proximate act) to commit the substantive crime, but nonetheless he somehow is unsuccessful. This lack of success is

either a "failure" or a "prevention" brought about because of some extraneous circumstances, e.g., a malfunction of equipment, a miscalculation of operations by the actor or a situation wherein circumstances were at variance with what the actor believed them to be.[2] Certain convictions for attempted murder illustrate the first category. Some turn on situations wherein the actor fires a weapon at a person but misses (*People* v. *Glick*, 107 Cal.App.2d 78, 79 [236 P.2d 586]); takes aim at an intended victim and pulls the trigger, but the firing mechanism malfunctions (*People* v. *Van Buskirk*, 113 Cal.App.2d 789, 793 [249 P.2d 49]); plants on an aircraft a homemade bomb which sputters but does not explode (*People* v. *Grant*, 105 Cal.App.2d 347, 356-357 [233 P.2d 660]). Another first category example is highlighted in *People* v. *Fulton*, 188 Cal.App.2d 105 [10 Cal.Rptr. 319]. The factual setting and legal reasoning in *Fulton* is well characterized by Justice Kingsley in *People* v. *Orndorff*, 261 Cal. App.2d 212, 215 [67 Cal.Rptr. 824]: "*Fulton* . . . involved an alleged Jamaica Switch, practiced on two alleged intended victims. The schemes failed, in one instance because a bank officer told the intended victim that it was a bunco scheme . . . . [T]he court unanimously held that . . . [this] instance was a punishable attempt . . . All three judges lay stress on the element of the procuring cause of failure, saying that it must be 'by extraneous circumstances,' or 'by circumstances independent of any actions of their [defendants'] part.' " The defendants in *Fulton* did every act in their preconceived plan. It was only the extraneous circumstance of the intended victim acquiring knowledge that the defendants' proposal to him was a bunco scheme which resulted in the defendants not obtaining the money.

In the above situations application of the rule stated in *People* v. *Buffum*, *supra*, 40 Cal.2d 709, 718, which defendant herein seeks to have applied, would appear to be quite appropriate. After a defendant has done all acts necessary under normal conditions to commit a crime, he is culpable for an attempt if he is unsuccessful *because* of an extraneous or fortuitous circumstance.[3]

---

[2]The "classic" case, often used as a law school hypothetical example, occurs when the pickpocket thrusts his hand into an empty pocket (*Commonwealth* v. *Cline* (1913) 213 Mass. 225 [100 N.E. 358]; compare with *People* v. *Fiegelman*, 33 Cal. App.2d 100 [91 P.2d 156]).

[3]It is interesting to note how the rule enunciated in *Buffum* entered California law. It first appeared in *People* v. *Miller*, 2 Cal.2d 527, 530 [42 P.2d 308], as quoted material from volume one of Wharton's Criminal Law. The source revealed in Wharton is *Sipple* v. *State* (1883) 46 N.J.L. 197. While the report of the decision is quite brief, the factual setting of *Sipple* looks remarkably like that presented in *Fulton*, above, i.e., a larcenous scheme wherein the defendant did all acts he had planned but the intended victim balked. The court in *Sipple* goes on to state: "At the trial the court ruled and charged that an attempt to steal, accompanied by an

■ However, it is quite clear that under California law an overt act, which, when added to the requisite intent, is sufficient to bring about a criminal attempt, need not be the last proximate or ultimate step towards commission of the substantive crime. "It is not necessary that the overt act proved should have been the ultimate step toward the consummation of the design. It is sufficient if it was 'the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made.' [Citation.]" (*People* v. *Gibson,* 94 Cal.App.2d 468, 470 [210 P.2d 747]; see also *People* v. *Seach,* 215 Cal.App.2d 779, 783 [30 Cal.Rptr. 499]; *People* v. *Parrish,* 87 Cal.App.2d 853, 856 [197 P.2d 804].) Police officers need not wait until a suspect, who aims a gun at his intended victim, actually pulls the trigger before they arrest him; nor do these officers need to wait until a suspect, who is forcing the lock of a bank door, actually breaks in before they arrest him for attempted burglary.

This rule makes for a second category of "attempts." The recognition of this separate category is well articulated by Mr. Chief Judge Learned Hand in *United States* v. *Coplon* (2d Cir. 1950) 185 F.2d 629, 633 [28 A.L.R.2d 1041], as follows: "A neat doctrine by which to test when a person, intending to commit a crime which he fails to carry out, has 'attempted' to commit it, would be that he has done all that it is within his power to do, but has been prevented by intervention from outside; in short that he has passed beyond any *locus poenitentiae*. Apparently that was the original notion, and may still be law in England; but it is certainly not now generally the law in the United States, for there are many decisions which hold that the accused has passed beyond 'preparation,' although he has been interrupted before he has taken the last of his intended steps."

Applying criminal culpability to acts directly moving toward commission of crime (but short of the last proximate act necessary to consummate the criminal design) under section 664 is an obvious safeguard to society because it makes it unnecessary for police to wait before intervening until the actor has done the substantive evil sought to be prevented. It allows such criminal conduct to be stopped or intercepted when it becomes clear what the actor's intention is and when the acts done show that the perpetrator is acually putting his plan into action. *Discovering precisely what conduct falls within this latter category, however, often becomes a*

overt act or acts towards its commission, contituted an attempt to commit larceny under the law, and further, that the act or acts done towards the commission of an offense, in order to constitute an attempt, must be such as will apparently result, in the usual and natural course of events, if not hindered by extraneous causes, in the commission of the crime itself. . . ."

*difficult problem.* Because of the lack of specificity of section 664, police, trial judges, jurors, and in the last analysis, appellate courts, face the dilemma of trying to identify that point beyond which conduct passes from innocent to criminal absent a specific event ·such as the commission of a prohibited substantive crime.

Our courts have come up with a variety of "tests" which try to distinguish acts of preparation from completed attempts. "The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made." (*People* v. *Murray,* 14 Cal. 159; see also, *People* v. *Franquelin,* 109 Cal.App.2d 777, 784 [241 P.2d 651].) " '[T]he act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation.' " (*People* v. *Miller, supra,* 2 Cal.2d 527, 530.) "[W]here the intent to commit the substantive offense is . . . clearly established . . . [,] acts done toward the commission of the crime may constitute an attempt, where the same acts would be held insufficient to constitute an attempt if the intent with which they were done is equivocal and not clearly proved." (*People* v. *Berger,* 131 Cal.App.2d 127, 130 [280 P.2d 136].)

None of the above statements of the law applicable to this category of attempts provide a litmus-like test, and perhaps no such test is achievable. Such precision is not required in this case, however. There was definitely substantial evidence entitling the trial judge to find that defendant's acts had gone beyond the preparation stage. Without specifically deciding where defendant's preparations left off and where his activities became a completed criminal attempt,[4] we can say that his "drilling" activity clearly was an unequivocal and direct step toward the completion of the burglary. (Cf. *People* v. *Burton,* 184 Cal.App.2d 299 [8 Cal.Rptr. 153]; *People* v. *Cloninger,* 165 Cal.App.2d 86 [331 P.2d 441]; *People* v. *Davis,* 24 Cal.App.2d 408 [75 P.2d 80].) It was a fragment of the substantive crime contemplated (*People* v. *Gallardo,* 41 Cal. 2d 57, 66 [257 P.2d 29]) i.e., the beginning of the "breaking" element. Further, defendant himself characterized his activity as the *actual commencement of his plan.* The drilling by defendant was obviously one of a series of acts which logic and ordinary experience indicate would result

---

[4]Commentator Bernard Witkin points out the difficulty of pinpointing in any given case the dividing line between acts of preparation and those acts which constitute the completed attempt. He suggests that courts review the entire factual pattern in what might be termed a "common sense approach" rather than trying to extrapolate from precisely drawn lines. (See 1 Witkin, Cal. Crimes (1963) Elements of Crime, § 96, p. 92.) Compare the approach taken by the drafters of the Model Penal Code, discussed in Wechsler, Jones and Korn, *The Treatment of Inchoate Crimes in the Model Penal Code* (1961) 61 Colum. L.Rev. 571, 592-607.)

in the proscribed act of burglary. (See *People* v. *Berger, supra,* 131 Cal. App.2d 127, 132.)

The instant case provides an out-of-the-ordinary factual situation within the second category. Usually the actors in cases falling within that category of attempts are intercepted or caught in the act (see e.g., *Burton, Cloninger* and *Davis, supra*). Here, there was no direct proof of any actual interception. But it was clearly inferable by the trial judge that defendant became aware that the landlord had resumed control over the office and had turned defendant's equipment and tools over to the police. This was the equivalent of interception.

The inference of this nonvoluntary character of defendant's abandonment was a proper one for the trial judge to draw. (*People* v. *Burton, supra,* 184 Cal.App.2d 299, 301; *People* v. *Von Hecht,* 133 Cal.App.2d 25, 37 [283 P.2d 764].) However, it would seem that the character of the abandonment in situations of this type, whether it be voluntary (prompted by pangs of conscience or a change of heart) or nonvoluntary (established by inference in the instant case), is not controlling. The relevant factor is the determination of whether the acts of the perpetrator have reached such a stage of advancement that they can be classified as an attempt. Once that attempt is found there can be no exculpatory abandonment. (*People* v. *Claborn,* 224 Cal.App.2d 38, 41 [36 Cal.Rptr. 132]; *People* v. *Robinson,* 180 Cal.App.2d 745, 750-751 [4 Cal.Rptr. 679], and cases cited therein; but see *People* v. *Montgomery,* 47 Cal.App.2d 1, 13 [117 P.2d 437].) ■ "One of the purposes of the criminal law is to protect society from those who intend to injure it. When it is established that the defendant intended to commit a specific crime and that in carrying out this intention he committed an act that caused harm[5] or sufficient danger of harm, it is immaterial that for some collateral reason he could not complete the intended crime." (*People* v. *Camodeca,* 52 Cal.2d 142, 147 [338 P.2d 903].)

The order is affirmed.

Stephens, Acting P. J., and Aiso, J., concurred.

A petition for a rehearing was denied April 23, 1970, and appellant's petition for a hearing by the Supreme Court was denied May 21, 1970.

---

[5]In the instant case defendant's drilling was done without permission and did cause property damage.