Filed 3/29/16  P. v. Bogarin CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067390 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS271663) |
| ANTHONY BOGARIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Stephanie Sontag, Judge.  Affirmed.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Adrianne S. Denault, Deputy Attorneys General, for Plaintiff and Respondent.

Anthony Bogarin appeals a judgment following his jury conviction of one count of attempted first degree burglary (Pen. Code, §§ 664, 459, 460).  On appeal, he contends:

(1) the evidence is insufficient to support his conviction of attempted burglary; (2) the trial court erred by admitting evidence of two prior burglaries he committed; and (3) the abstract of judgment must be corrected to accurately reflect the days of custody credits awarded by the court.

## FACTUAL AND PROCEDURAL BACKGROUND

At about 9:30 a.m. on April 18, 2014, Christina Galvan was alone, sleeping in her bedroom of her one-story San Diego house, when she was awakened by the sound of the doorbell ringing. Her father, who also lived in the house, was at work. Galvan heard the doorbell ring about 25 times. She walked to the front door, looked through its peephole, and saw Bogarin looking around nervously. Bogarin then began repeatedly knocking on the front door. She heard a series of knocks and doorbell ringing. She saw Bogarin jiggle the doorknob and "kind of leaning into it [i.e., the door] with his shoulder."[1] He leaned his shoulder into the door about four times. Bogarin's doorbell ringing, knocking, and leaning into the door lasted about five minutes. Galvan went to her bedroom, called her father, and told him someone was at the front door "ringing like crazy and knocking like crazy and they are hitting the door handle and pushing into it." He advised her to call 911 and immediately headed home. She called 911 to report the incident.[2] When she was in her bedroom, she heard the two trash cans located outside her window being

---

[1]  Galvan described the doorknob as one with "a little lever your thumb would press down and then open."

[2]  Her father also called 911 on his way home.

moved. The two trash cans were located in front of a locked side gate near her bedroom window. She did not hear anyone trying to jiggle the gate.

When Galvan's father arrived home, he noticed the two trash cans had been moved one to two feet away from the gate. He normally kept the cans flush with the gate to prevent people from entering. Police officers found Bogarin, who matched Galvan's description of the man, riding a bicycle about one block from her house. He was wearing gloves and a backpack.

An information charged Bogarin with one count of attempted first degree burglary. It also alleged he had two prison priors (Pen. Code, §§ 667.5, subd. (b), 668), two serious felony priors (Pen. Code, §§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and four prior strike convictions (Pen. Code, §§ 667, subds. (b)-(i), 1170.12).

At trial, the prosecution presented evidence substantially as described above. As discussed below, it also presented evidence of two prior burglaries he committed. Bogarin did not present any evidence in his defense. The parties stipulated that Bogarin was working as a laborer during the week of April 13, 2014, but did not work on April 18. His wages for that week were $139.80. The jury found Bogarin guilty of attempted first degree burglary. In a bifurcated trial, the trial court found true the prior offense allegations. The court sentenced Bogarin to an indeterminate term of 25 years to life in prison, plus a determinate term of 10 years. It awarded him a total of 315 days of actual and conduct credits. Bogarin timely filed a notice of appeal.

DISCUSSION

I

*Substantial Evidence to Support Bogarin's Conviction*

Bogarin contends the evidence is insufficient to support his conviction of attempted first degree burglary. Although he conceded at trial that he had the specific intent to commit the burglary of Galvan's house, he argues there was insufficient evidence to support a finding he committed a direct step toward the commission of a burglary. He argues the evidence supports, at most, a finding he committed only acts in preparation for, or the planning of, a burglary of Galvan's house.

A

When a defendant challenges the sufficiency of the evidence to support a judgment or finding, we apply the substantial evidence standard of review. Generally, our task "is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, citing *People v. Johnson* (1980) 26 Cal.3d 557, 578.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

The substantial evidence standard of review involves two steps. "First, one must resolve all explicit conflicts in the evidence in favor of the respondent and presume in favor of the judgment all *reasonable* inferences. [Citation.] Second, one must determine

4

whether the evidence thus marshaled is substantial. While it is commonly stated that our 'power' begins and ends with a determination that there is substantial evidence [citation], this does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment. . . . [Citation.] '[I]f the word "substantial" [is to mean] anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable . . . , credible, and of solid value . . . .' [Citation.] The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632-1633, fns. omitted.) The standard of review is the same in cases in which the prosecution relies primarily on circumstantial evidence. (*People v. Bean* (1988) 46 Cal.3d 919, 932.)

B

"An attempt to commit a crime requires a specific intent to commit the crime and a direct but ineffectual act done toward its commission." (*People v. Kipp* (1998) 18 Cal.4th 349, 376; see also Pen. Code, § 21a ["An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission."].) The required direct act "must go beyond mere preparation, and it must show that the perpetrator is putting his or her plan into action, but the act need not be the last proximate or ultimate step toward commission of the substantive crime." (*Kipp*, at p. 376.)

5

"Between preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made." (*People v. Murray* (1859) 14 Cal. 159.) "As simple as it is to state the terminology for the law of attempt, it is not always clear in practice how to apply it. As other courts have observed, ' "[m]uch ink has been spilt in an attempt to arrive at a satisfactory standard for telling where preparation ends and attempt begins." [Citation.]' " (*People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 8.) "Although a definitive test has proved elusive, we have long recognized that '[w]henever the design of a person to commit crime is clearly shown, slight acts in furtherance of the design will constitute an attempt.' " (*Ibid.*)

There is no defense of voluntary abandonment to the offense of attempt. (*People v. Dillon* (1983) 34 Cal.3d 441, 454 (*Dillon*).) If a defendant has the requisite intent and commits a direct act toward the commission of the substantive offense, it is irrelevant that the defendant may thereafter have voluntarily abandoned his or her efforts to commit the substantive crime. (*Ibid.*) Alternatively stated, "a last-minute change of heart by the perpetrator should not be permitted to exonerate him." (*Id.* at p. 455.)

C

Based on our review of the record in this case, we conclude there is substantial evidence to support the jury's finding Bogarin committed a direct but ineffectual act toward the commission of burglary of Galvan's house. In her opening statement and closing argument, Bogarin's counsel conceded he had the requisite specific intent to

6

burglarize Galvan's house. Considering the evidence, and all reasonable inferences therefrom, favorably to support the jury's verdict, we conclude there is substantial evidence to support a finding Bogarin committed "slight acts" in furtherance of his plan to burglarize her house and thereby committed the offense of attempted burglary. (*People v. Superior Court* (*Decker*), *supra*, 41 Cal.4th at p. 8.)

The evidence supports findings Bogarin approached Galvan's house and, over a period of five minutes, rang its doorbell about 25 times, repeatedly knocked on the front door, jiggled the doorknob, and leaned or pushed into the door with his shoulder about four times. The evidence also supports a finding Bogarin then went to the side of the house and moved two trash cans that were positioned directly in front of a locked gate before leaving the premises. The jury could reasonably infer Bogarin had the specific intent to burglarize Galvan's house when he approached it. It could also reasonably infer that he committed direct but ineffectual acts toward the commission of that burglary when he presumably attempted to ascertain whether anyone was home by repeatedly ringing the doorbell and knocking on the front door, jiggled the doorknob and leaned or pushed into the door with his shoulder in an unsuccessful attempt to open the door, and moved the two trash cans in front of the side gate in an unsuccessful attempt to enter the backyard through the gate, which he discovered was locked. Considering the evidence and inferences therefrom favorably to support the jury's verdict, we conclude the jury reasonably found Bogarin committed direct but ineffectual acts toward the commission of a burglary of Galvan's house. The jury could reasonably find, contrary to Bogarin's assertion, that his acts were more than mere preparation for a burglary of Galvan's house.

7

Although the cases cited by Bogarin are, as he argues, factually apposite to this case, those cases nevertheless do not persuade us to reach a contrary conclusion. (See, e.g., *People v. Staples* (1970) 6 Cal.App.3d 61; *People v. Prince* (2007) 40 Cal.4th 1179.) The fact the defendants in those cases took actions that more demonstratively showed they took direct steps toward the commission of burglaries (e.g., entry of backyard) does not show the actions taken by Bogarin were insufficient to show he committed a direct step toward the burglary of Galvan's house.

Bogarin also argues the evidence is insufficient to support a finding he took a direct step toward the commission of a burglary because there is no evidence his completion of the burglary was prevented by an extraneous or outside influence or circumstance (e.g., a discovery or being frightened off by anyone) and instead supports only an inference he voluntarily abandoned his plan to burglarize Galvan's house before committing any direct step toward its commission. However, as stated above, voluntary abandonment after a direct step toward commission of a burglary is *not* a defense to a charge of attempted burglary. (*Dillon*, *supra*, 34 Cal.3d at pp. 454-455.) In any event, the jury could reasonably infer Bogarin voluntarily abandoned his efforts to burglarize Galvan's house because his attempt was frustrated by the locked front door and then the locked side gate. Furthermore, to the extent Bogarin argues the evidence is insufficient to support a finding he committed an appreciable fragment of a burglary, the California Supreme Court expressly rejected the argument that a defendant must commit an actual element of the substantive offense to be guilty of attempt, holding that its prior use of the phrase, " 'appreciable fragment of the crime,' " was merely a restatement of the direct step

8

element.  (*Dillon*, at p. 454.)  Bogarin has not carried his burden on appeal to show the evidence is insufficient to support his conviction of attempted burglary.

## II

### *Admission of Evidence of Bogarin's Prior Burglaries*

Bogarin contends the trial court erred by admitting evidence of two of his prior burglary convictions as relevant to prove his intent to commit the alleged burglary.

### A

Before trial, the prosecution filed a motion in limine to allow the admission of evidence under Evidence Code section 1101, subdivision (b),[3] of two of Bogarin's prior burglary convictions to prove his intent to commit the instant offense.  In one case, Bogarin was inside the Beaneses' home when they returned, he fled, and was later found with a backpack containing the Beaneses' property.  In the other case, Bogarin knocked on the door of Patricia Ramirez's home.  When she went to answer the door, Bogarin was already trying to force the door open by turning the knob.  He successfully entered the home and took property.  The prosecution argued that because Bogarin had the specific intent to commit burglary in those two similar cases, the prior acts evidence was relevant to prove he had the specific intent to burglarize Galvan's house in the instant case.  It further argued that the probative value of that prior acts evidence outweighed any prejudicial effect it might have.

---

[3]     All further statutory references are to the Evidence Code.

Bogarin opposed the motion, arguing the proffered evidence was not relevant because he would concede the element of intent at trial and, in any event, the circumstances in those prior offenses were not sufficiently similar to the circumstances in this case. He also argued that evidence should be excluded as unduly prejudicial under section 352. The trial court granted the prosecution's motion, but limited the evidence to only that relevant to intent and excluded evidence that Ramirez and her child hid in the garage and Bogarin used violence inside the Beaneses' home and thereafter.

At trial, Ramirez testified that on January 3, 2007, she and her young daughter were inside their home when Bogarin repeatedly rang the doorbell and knocked on the front door. He jumped up several times, attempting to look through the door's window. Ramirez went to her bedroom and saw the screen on the bathroom window had been removed. She took her daughter to the garage and they crawled under the car, where she called 911. Police arrived and arrested Bogarin inside the home. Money and jewelry belonging to Ramirez was found in his possession. Retired San Diego Police Detective Bobby Rollins also testified regarding the Ramirez burglary, stating Bogarin had gained entrance to Ramirez's home through a window in the backyard area past a gate.

Chula Vista Police Detective Michelle Schneider testified that on December 30, 2003, she went to the home of Raul and Lydia Beanes to investigate a burglary. When the Beaneses returned home, they found broken window glass on the floor and saw Bogarin coming out of their master bedroom with a backpack. Bogarin ran from the home. He was apprehended by officers and arrested. He had the Beaneses' property inside his backpack.

Bogarin's counsel informed the jury of the parties' stipulation that Bogarin pleaded guilty to the 2003 burglary of the Beaneses' home and the 2007 burglary of Ramirez's home.

B

Section 1101, subdivision (a), states that character evidence is inadmissible unless otherwise provided:

> "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

However, section 1101, subdivision (b), provides an exception to that general rule of exclusion, stating:

> "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, *intent*, preparation, plan, knowledge, identity, absence of mistake or accident, . . . ) other than his or her disposition to commit such an act."  (Italics added.)

Section 1101, subdivision (b), clarifies that the general rule of exclusion of character evidence "does not prohibit admission of evidence of [prior acts] when such evidence is relevant to establish some fact other than the [defendant's] character or disposition." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393, fn. omitted (*Ewoldt*).)

In *Ewoldt*, the California Supreme Court discussed the rules on admissibility of evidence on a defendant's prior acts:

> "Subdivision (a) of section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of

11

specific instances of [prior acts], to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of [prior acts] when such evidence is relevant to establish some fact other than the person's character or disposition." (*Ewoldt*, *supra*, 7 Cal.4th at p. 393, fn. omitted.)

"A person's own prior misconduct may be admissible to show that the charged offense is so similar as to support an inference that the same person committed both acts, or *to show that in light of the prior conduct the person must have harbored a similar intent or motive during the charged offense.*" (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1258, italics added.) A prior criminal act is probative of a defendant's intent if it is "sufficiently similar to the charged offense to support the inference that the defendant probably acted with the same intent in each instance." (*People v. Lindberg* (2008) 45 Cal.4th 1, 23 (*Lindberg*).)

Although evidence on prior acts may be admissible under sections 1101, subdivision (b), that evidence may nevertheless be inadmissible under section 352, which provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." A determination of inadmissibility of evidence under section 352 requires the balancing of the probative value of the evidence against its potential prejudicial effect. (*Ewoldt*, *supra*, 7 Cal.4th at pp. 404-405.) " 'The prejudice which exclusion of evidence under . . . section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative

12

evidence.' " (*People v. Zapien* (1993) 4 Cal.4th 929, 958.) Rather, evidence is unduly prejudicial under section 352 only when it uniquely tends to evoke an emotional bias against the defendant as an individual and has very little effect on the issues. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1118.)

"On appeal, a trial court's ruling under . . . sections 1101 and 352 is reviewed for abuse of discretion." (*People v. Lewis* (2001) 25 Cal.4th 610, 637; see also *People v. Jones* (2013) 57 Cal.4th 899, 930.) We will not disturb the court's ruling unless it is shown the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Brown* (2003) 31 Cal.4th 518, 534.)

C

Based on our review of the record, we conclude the trial court did not abuse its discretion under sections 1101, subdivision (b), and 352 by admitting the prosecution's evidence of two of Bogarin's prior burglary convictions. Contrary to Bogarin's assertion, the evidence of his prior burglaries was relevant to prove the element of specific intent in this case despite the fact his counsel conceded he had the specific intent to commit burglary. Because Bogarin pleaded not guilty to the charge of attempted burglary, he put all elements of that offense in dispute at trial. (*People v. Scott* (2011) 52 Cal.4th 452, 470; *Lindberg*, *supra*, 45 Cal.4th at p. 23; *People v. Roldan* (2005) 35 Cal.4th 646, 705-706.) Furthermore, the trial court instructed the jury with CALCRIM No. 460 that, to prove the offense of attempted burglary, the prosecution must prove Bogarin: (1) took a direct but ineffective step toward committing burglary; and (2) *intended* to commit

13

burglary. Because specific intent is an element of attempted burglary, the prosecution therefore properly proffered evidence on that element, including evidence of Bogarin's two prior burglaries, to prove beyond a reasonable doubt he committed the offense of attempted burglary. (*Roldan*, at pp. 706-707; *People v. Williams* (1988) 44 Cal.3d 883, 907, fn. 7.) Alternatively stated, the prior offense evidence was relevant to, or probative of, the element of specific intent and therefore not inadmissible based on Bogarin's concession on the issue of specific intent. *People v. Balcom* (1994) 7 Cal.4th 414, cited by Bogarin, is factually inapposite to this case and does not persuade us to reach a contrary conclusion. Furthermore, contrary to Bogarin's assertion, the evidence of his two prior burglaries was not merely cumulative of other evidence of his intent in this case, but rather was quite probative on the element of specific intent. (Cf. *Balcom*, at p. 423.)

Bogarin also asserts the trial court should have excluded the section 1101, subdivision (b), evidence of his two prior burglaries because they were not sufficiently similar to the instant charged attempted burglary to support the inference he probably acted with the same intent in each instance. (*Lindberg*, *supra*, 45 Cal.4th at p. 23.) Contrary to his assertion, the fact the two prior burglaries were completed and the instant charged offense was not, but only attempted, does not make them dissimilar. Rather, sufficient similarity in Bogarin's conduct leading up to the actual, or attempted, burglary during each incident may show he acted with the same intent in each instance. In both the instant case and the Ramirez burglary, Bogarin repeatedly rang the doorbell and knocked on the front door. When no one answered the door, he went around to the side

14

of the home, presumably to find a way to break into the home (e.g., through a window). The fact he successfully broke into Ramirez's home, but not Galvan's home, did not necessarily make those two incidents insufficiently similar for admission of evidence of the Ramirez burglary under section 1101, subdivision (b). Likewise, in both the instant case and the Beanes burglary, Bogarin was found with a backpack. The fact his backpack contained the Beaneses' property after that burglary, but not Galvan's property after the instant charged offense, did not necessarily make those two incidents insufficiently similar for admission of evidence of the Beaneses' burglary under section 1101, subdivision (b). Rather, the trial court reasonably exercised its discretion by concluding the Ramirez and Beanes burglaries were sufficiently similar to the instant charged attempted burglary to support the inference Bogarin probably acted with the same intent in each instance. (*Lindberg*, at p. 23.)

To the extent Bogarin also asserts the trial court should have excluded evidence of the two prior burglaries under section 352 because the probative value of that evidence was outweighed by its probable prejudicial effect, we disagree. The prior burglaries were not so much more egregious or serious than the instant charged offense as to inflame the passions of the jurors. Although, contrary to the court's order, Ramirez testified she and her daughter hid under a car in the garage, that testimony appeared to be presented in a factual manner that was not unduly emotional or inflammatory. Furthermore, because Bogarin was convicted of burglary in both of the prior cases, the jury presumably did not consider convicting him in this case in order to punish him for his past bad acts. Also, the evidence of his two prior burglaries came from independent sources, thereby

15

supporting its reliability. The court did not abuse its discretion by concluding the evidence of Bogarin's two prior burglaries was not unduly prejudicial or otherwise inadmissible under section 352 and admitting that evidence under section 1101, subdivision (b). (*People v. Kipp*, *supra*, 18 Cal.4th at p. 372.)

D

Assuming arguendo the trial court abused its discretion by admitting evidence of Bogarin's two prior burglaries under section 1101, subdivision (b), we nevertheless conclude he has not carried his burden on appeal to persuade us it is reasonably probable he would have obtained a more favorable result at trial had that evidence been excluded. (*People v. Rivera* (1985) 41 Cal.3d 388, 393; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Contrary to Bogarin's assertion, the purported error in the admission of that evidence did not deny him any right under the federal Constitution. The application of ordinary rules of evidence generally does not impermissibly infringe on a defendant's constitutional rights. (*People v. Cudjo* (1993) 6 Cal.4th 585, 611; *People v. Hall* (1986) 41 Cal.3d 826, 834-835.) Accordingly, we apply the state standard of prejudicial error in determining whether the purported error requires reversal of Bogarin's conviction. (*Rivera*, at p. 393; *Watson*, at p. 836 [error is harmless unless it is reasonably probable a more favorable result would have been obtained].)

Based on our review of the record, we conclude Bogarin probably would not have obtained a more favorable verdict had the evidence of his two prior burglaries been excluded. In his counsel's opening statement and closing argument, the element of specific intent was, in effect, conceded. On the charge of attempted burglary, the crux of

16

the case therefore was whether he took any direct but ineffectual step toward the commission of a burglary. The jury heard the testimony of Galvan and her father, which provided strong proof that Bogarin's actions at Galvan's house were not merely in preparation for a burglary, but instead were direct steps toward the commission of a burglary. The jury could reasonably infer Bogarin repeatedly rang the doorbell and knocked on the door to ascertain whether anyone was inside the house. The jury could further reasonably infer he jiggled the doorknob and pushed or leaned against the door four times in an attempt to break into the house. The jury could also reasonably infer that when he was unsuccessful in doing so, he went around the side of the house and moved the two trash cans in an attempt to access the backyard and house through the side gate, but abandoned his attempt to burglarize the house after finding the gate was locked. It is unlikely the evidence of Bogarin's two prior burglaries would have changed the jury's inferences regarding his actions in the instant case. Alternatively stated, it is highly unlikely the jury would instead have inferred all of those actions by Bogarin were merely in preparation for, and not direct steps toward, the commission of a burglary. We conclude any error by the court in admitting the evidence of his two prior burglaries was not prejudicial and does not require reversal of his conviction of attempted burglary. (*People v. Rivera*, *supra*, 41 Cal.3d at p. 393; *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

17

III

*Abstract of Judgment*

Bogarin contends, and the People agree, the abstract of judgment must be corrected to reflect the number of credits the trial court awarded him at sentencing. At his sentencing, the court awarded him actual credits of 274 days and conduct credits of 41 days, for a total of 315 days of credits. However, the abstract of judgment erroneously shows an award by the court of only 271 days of actual credits, but then accurately shows total credits of 315 days. Because the abstract of judgment does not accurately reflect the court's judgment, it must be corrected to reflect the court's award of 274 days of actual credits. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Mesa* (1975) 14 Cal.3d 466, 471.)

DISPOSITION

The judgment is affirmed. The court clerk is directed to prepare a corrected or amended abstract of judgment showing an award of 274 days of actual credits and forward it to the Department of Corrections and Rehabilitation.

McDONALD, J.

WE CONCUR:

HALLER, Acting P. J.

AARON, J.

18