**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Charity LEHNERT, Defendant–Appellant.**

No. 02CA2186.

Colorado Court of Appeals,
Division II.

July 28, 2005.

Rehearing Denied Dec. 12, 2005.

Certiorari Granted April 10, 2006.*

§ 24–51–1105, C.R.S. 2004.

\* Justice EID does not participate.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Jonathan D. Reppucci, LLC., Jonathan D. Reppucci, Denver, Colorado, for Defendant–Appellant.

Opinion by: Judge ROTHENBERG.

Defendant, Charity Lehnert, appeals the judgment of conviction entered on a jury verdict finding her guilty of attempted first degree murder and possession of explosive or incendiary devices. Because we conclude there was insufficient evidence to establish defendant's guilt of attempted first degree murder, we reverse that conviction, but affirm her conviction for possession of explosive or incendiary devices.

## I.

In July 2001, the owner of a gun shop called the Denver Police Department with a report that a suspicious young woman attempted to buy gunpowder from him. The woman was later identified as defendant.

A few days later, the police department received a tip that defendant was planning to kill two people, including an officer with the Department of Corrections (DOC). This information came from a friend of defendant who agreed to cooperate with police. The friend told police that defendant had visited her immediately after defendant had been released from the DOC. According to the friend, defendant stated that she intended to "kill two pigs" with "two pipe bombs," she had obtained the home address of one of the potential victims, she had driven past his house several times, and she had visited another gun shop. Police later learned that defendant had purchased two boxes of shotgun shells from this shop.

The police obtained a search warrant for defendant's apartment where they found wire, electrical tape, a battery, two metal pipes which were scored in an apparent attempt to increase the amount of shrapnel from them, two metal cap ends, gloves, tools, shotgun shells, materials for new identification, defendant's driver's license, flashlight bulbs (which are potentially usable as ignition devices in pipe bombs), falsified birth certificates, a falsified high school transcript, and directions to the victim's house.

At trial, a detective on the Denver Bomb Squad, testifying as an expert witness, said the materials recovered from the apartment could have been used to construct a pipe bomb. He further testified as follows:

*Direct Examination*

Q: What did you do in response to that information [regarding information about defendant obtaining a switch]?

A: Well, I already knew that the pipe was present, the end caps were present, that there was an ignition source and that there was powder available, the only thing missing was a switch.

. . . .

Q: [W]hat was assembled in that apartment at that time, did that still qualify as an explosive device or explosive parts?

A: Yes.

Q: [W]hy is that?

A: [A] switch could be made, a very simple switch could be made out of the wire that's present there.

. . . .

Q: In your opinion as an expert, did the items that you seized in that apartment constitute an explosive device or explosive parts?

A: It falls under parts, ones to be put together. It would fall under an actual device.

. . . .

### Cross–Examination

Q: At the time you did not have to take any precautions when removing these items from the apartment?

A: That's correct.

Q: Meaning because that as a member of the Denver Police Department Bomb Squad, sometimes an item has to be placed in a canister, any type of explosive so that it does not detonate; correct?

A: It's a safety procedure, yes.

Q: None of that was necessary here?

A: Because it wasn't put together.

Q: None of that was necessary here?

A: Yes.

. . . .

Q: Nothing had been done with regards to the shotgun shells to alter them in order to make an attempt to obtain the gunpowder?

A: Yes.

. . . .

### Re–Direct

Q: What's it mean to you with 28 years of bomb experience when you find all of those items with the pipes scored and the end caps drilled, when you find all of these items in one backpack or in one room? What does that mean to you?

A: Indicates to me that I have components for a pipe bomb.

This witness further testified that to construct a workable pipe bomb, a switch would be required to ignite the gunpowder. He said it was common to use a clothespin in the switch, which would give the bomber some control over the detonation of a pipe bomb. There was some evidence that defendant was preparing to obtain a clothespin in order to construct a switch, but no clothespins were seized from her apartment.

Defendant was sentenced to thirty years imprisonment for the attempted murder and six years imprisonment for the possession of explosive or incendiary devices, plus a period of mandatory parole. The court ordered that the sentences be served concurrently.

### II.

■ Defendant contends there was insufficient evidence presented at trial to convict her of attempted first degree murder. She maintains that there was no evidence she took a "substantial step" toward the commission of the crime, but that the evidence only proved "mere preparation." We agree.

To assess the sufficiency of the evidence supporting a guilty verdict, we "must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable doubt." *People v. Sprouse,* 983 P.2d 771, 777 (Colo. 1999). The verdict must be upheld if there is sufficient evidence to support it. *People v. Dunaway,* 88 P.3d 619 (Colo.2004).

Section 18–2–101(1), C.R.S.2004, states:

A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of

the actor's purpose to complete the commission of the offense.

■ An attempt requires some overt act beyond preparation, but the overt act need not be the last proximate act necessary to complete the offense. *People v. Young*, 694 P.2d 841 (Colo.1985)(evidence was sufficient to support conviction for attempted inducement of child prostitution where the defendant induced a twelve-year-old boy into defendant's home, said he "liked little boys," lowered his pants, began masturbating, and offered the boy $10 to masturbate with him); *People v. Jackson*, 972 P.2d 698, 701 (Colo.App.1998)(evidence was sufficient to support conviction for attempted second degree sexual assault where victim went to the defendant's home with her thirteen-year-old daughter; victim entered the bathroom; the defendant followed her, shoved her on the floor, and then tried to pull down her shorts while she was screaming "no" or "stop"; and the defendant said he was "going to get it from [her] anyway").

The distinction between "mere preparation" and "substantial step" is not always clear. As other courts have observed, there are two categories under the general heading of attempts.

In the first category are those situations where the actor does all acts necessary (including the last proximate act) to commit the substantive crime, but nonetheless he somehow is unsuccessful. This lack of success is either a "failure" or a "prevention" brought about because of some extraneous circumstance, e.g., a malfunction of equipment, a miscalculation of operations by the actor or a situation wherein circumstances were at variance with what the actor believed them to be. Certain convictions for attempted murder illustrate the first category. Some turn on situations wherein the actor fires a weapon at a person but misses; takes aim at an intended victim and pulls the trigger, but the firing mechanism malfunctions; [or] plants on an aircraft a homemade bomb which sputters but does not explode.

*People v. Staples*, 6 Cal.App.3d 61, 85 Cal. Rptr. 589, 592 (1970)(footnote and citations omitted).

The second category of attempts occurs where the actor has passed beyond preparation but has been interrupted before taking the last intended step. As the California Court of Appeals has explained:

[T]here are many decisions which hold that the accused has passed beyond "preparation," although he has been interrupted before he has taken the last of his intended steps. Applying criminal culpability to acts directly moving toward commission of crime (but short of the last proximate act necessary to consummate the criminal design) ... is an obvious safeguard to society because it makes it unnecessary for police to wait before intervening until the actor has done the substantive evil sought to be prevented. It allows such criminal conduct to be stopped or intercepted when it becomes clear what the actor's intention is and when the acts done show that the perpetrator is actually putting his plan into action. Discovering precisely what conduct falls within this latter category, however, often becomes a difficult problem. Because of the lack of specificity in [the attempt statutes], police, trial judges, jurors, and in the last analysis, appellate courts, face the dilemma of trying to identify that point beyond which conduct passes from innocent to criminal absent a specific event such as the commission of a prohibited substantive crime.

*People v. Staples, supra*, 85 Cal.Rptr. at 593 (citations omitted).

Courts throughout the country have developed a variety of tests to distinguish acts that constitute substantial steps toward commission of the underlying offense from acts of mere preparation. However, "[n]one of [the courts] provide[s] a litmus-like test, and perhaps no such test is achievable." *People v. Staples, supra*, 85 Cal.Rptr. at 594; *see People v. Adami*, 36 Cal.App.3d 452, 111 Cal.Rptr. 544, 546 (1973)(to reach the level of attempt, mere preparation is not enough but "some appreciable fragment of the crime must have been accomplished").

After reviewing the cases, we conclude it is impossible to lay down a bright line rule as to when a defendant's actions go beyond

mere preparation in cases such as this one. Nevertheless, the cases have generally involved the use of a viable bomb or an explosive device that was placed by the defendant in proximity to the victim. We have found no reported appellate decision, and the People have not cited any, upholding an attempted murder conviction involving the use of bombs or similar devices unless there was evidence either of a completed bomb *or* proximity to the intended victim. Here, we have neither. *See Swift & Co. v. United States,* 196 U.S. 375, 402, 25 S.Ct. 276, 281, 49 L.Ed. 518 (1905)("Not every act that may be done with intent to produce an unlawful result is unlawful, or constitutes an attempt. It is a question of proximity and degree.").

For example, in *Cox v. State* 180 Ga.App. 820, 350 S.E.2d 828 (1986), the defendant's conviction for attempted murder of his wife and her former boyfriend was affirmed. Witnesses testified that he had threatened to kill the pair and that he had spent two nights under the porch of his mobile home with a .410 pump shotgun, expecting them to drive by. Also, the male victim's brother found a stick of dynamite and blue and yellow wiring attached to the family car, and earlier that week, the defendant had displayed a stick of dynamite to a friend and told him he was going to place it under the car used by the family of his wife's boyfriend. Detonating wire similar to that attached to the dynamite was found in the defendant's bedroom closet, and he was arrested in the yard of the home adjacent to the house where the wired car was parked.

The defendant in *Cox* was arrested because he was caught stealing a battery from a pick-up truck, and a nine-volt battery was found in his pocket. Further, an explosives expert testified that the nine-volt battery, if new, could provide sufficient power to detonate the dynamite and that the resulting explosion would kill anyone in the car at the time of detonation. *See People v. Grant,* 105 Cal.App.2d 347, 233 P.2d 660 (1951)(evidence of attempt sufficient where defendant placed a time bomb in an airplane on which his wife and children were to embark); *Armstrong v. State,* 429 N.E.2d 647 (Ind.1982)(attempted murder conviction was supported by evidence

that the defendant exploded a homemade bomb in the victim's home); *People v. Ng,* 156 Mich.App. 779, 402 N.W.2d 500 (1986)(defendant's designing and mailing of a bomb constituted an overt act); *State v. Engle,* 2005 WL 159632 (Ohio Ct.App. No. 03–CA–84, Jan. 21, 2005)(unreported)(evidence that the defendant attached an explosive device to the automobile of the intended victim showed a substantial step toward the commission of an offense).

We agree with the People that law enforcement officials need not wait until the last proximate act is completed before intervening, and we do not question the wisdom of their early intervention and arrest of defendant in this case. The only issue here is the nature of the crime or crimes that defendant committed. The evidence proved that she had the motive and expressed her intent to kill the victim, a corrections officer whom she knew and disliked; that she possessed most, but not all, of the components needed to build a pipe bomb; that she also possessed materials for false identification; that she knew the victim's home address; and that she admitted driving by his house. But it is undisputed that no bomb was fully constructed, nor was a bomb placed in the proximity of the intended victim. Defendant was arrested before any of these events could occur, and the pipe bomb components that were seized neither constituted an assembled bomb nor posed any danger of exploding. Further, defendant was arrested far from the victim's home or office. Thus, while evidence showed she was preparing to carry out her plan, she was arrested before she took any substantial step beyond preparation.

We therefore conclude as a matter of law there was insufficient evidence to show defendant took a substantial step toward the completion of the underlying offense of first degree murder. Accordingly, her conviction for attempted first degree murder cannot stand.

Given our conclusion, we need not address defendant's contention that deficiencies in the verdict form require that her crime of violence conviction be vacated.

## III.

Defendant next contends her conviction for possession of explosive or incendiary devices must be reversed and a new trial ordered on that count. According to defendant, the trial court erred in admitting, over her objection, testimony that she held a party two years before this offense to celebrate the murder of a police officer. We agree that admission of the evidence was erroneous, but we conclude the error was harmless.

Contrary to the People's contention, this evidence involved an event that was not contemporaneous with the crime charged and does not illustrate its character. Hence, it was not part of the res gestae. *See People v. Medina,* 51 P.3d 1006 (Colo.App.2001) (defendant's statements to his wife occurred more than two years after the crime and, even if true, implicated him in the separate crime of witness tampering; thus, they could not be characterized as res gestae), *aff'd sub nom. Mata–Medina v. People,* 71 P.3d 973 (Colo.2003); *People v. Frost,* 5 P.3d 317 (Colo.App.1999) (defendant's statements relating to other acts were not res gestae because they were made several months after the alleged offense).

Nevertheless, the erroneous admission of evidence does not warrant reversal unless the ruling affects a substantial right of the party against whom the ruling is made. The proper inquiry in determining harmless error questions is whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. *People v. Robinson,* 874 P.2d 453 (Colo.App.1993).

Here, only a small portion of the witness's testimony related to the party, which occurred in 1997. Most of her testimony related to the material for the pipe bomb and defendant's recent statements that she intended to kill the corrections officer. Thus, while we agree the testimony was inadmissible, in light of the other testimony and the physical evidence against defendant concerning her possession of an explosive or incendiary device, we conclude it did not substantially affect the fairness of the trial.

## IV.

Defendant next contends the trial court abused its discretion in denying her motion for a mistrial based on allegedly prejudicial testimony by a witness. Again, we disagree.

A mistrial is a drastic remedy that is warranted only where the prejudice to the defendant is too substantial to be remedied by other means. The determination whether to declare a mistrial is committed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *People v. Copenhaver,* 21 P.3d 413 (Colo.App.2000).

Further, a mistrial is not automatically required simply because some reference was made to inadmissible other bad act evidence. *See People v. Vigil,* 718 P.2d 496 (Colo.1986)(discussing references to uncharged crime evidence in substantive crime phase of case). It is well established that error in admitting evidence may be cured by instructing the jury to disregard it unless that evidence is so prejudicial that the jurors will unlikely be able to erase it from their minds. *People v. Shreck,* 107 P.3d 1048 (Colo.App.2004).

Here, the court instructed the jurors to disregard the improper testimony, and we must assume the jurors followed that instruction. *See Schmutz v. Bolles,* 800 P.2d 1307 (Colo.1990). In addition, much of the improper testimony by this witness related to information of which the jury was already aware, such as the fact that defendant had previously been in prison.

Accordingly, we conclude the trial court did not abuse its discretion in refusing to grant a mistrial.

The judgment of conviction for attempted first degree murder is reversed. The judgment of conviction for possession of explosive or incendiary devices is affirmed.

Judge WEBB and Judge CRISWELL** concur.