The PEOPLE of the State of
Colorado, Petitioner

v.

Charity LEHNERT, Respondent.

No. 05SC916.

Supreme Court of Colorado,
En Banc.

June 25, 2007.

As Modified on Denial of Rehearing
Aug. 13, 2007.*

John W. Suthers, Attorney General, Roger
G. Billotte, Assistant Attorney General, Appellate Division, Denver, Colorado, Attorneys
for Petitioner.

* Justice Eid does not participate.

Jonathan D. Reppucci, LLC Jonathan D. Reppucci, Denver, Colorado, Attorney for Respondent.

Justice COATS delivered the Opinion of the Court.

The People petitioned for review of the court of appeals' judgment reversing the defendant's conviction of attempted first degree murder. *See People v. Lehnert*, 131 P.3d 1104 (Colo.App.2005). The trial court denied the defendant's motion for judgment of acquittal, following the introduction of evidence to the effect that the defendant expressed her intent to kill a particular sheriff's deputy with a pipe bomb; that she admitted learning the victim's address and driving by his house; and that she possessed almost all of the components needed to build a pipe bomb, as well as materials to manufacture false identifications. The court of appeals reversed, finding the evidence insufficient to prove that the defendant took a "substantial step" toward commission of the crime.

Because there was sufficient evidence at trial to reach the jury on all of the elements of attempted first degree murder, the judgment of the court of appeals is reversed, and the case is remanded with directions to reinstate the judgment of conviction.

## I.

The defendant, Charity Lehnert, was charged with attempted first degree murder, possession of explosive or incendiary parts, committing a crime of violence, and two less serious offenses of drug possession. She was convicted of all but the drug charges, and she was sentenced to terms of thirty years for attempted murder and six years for possession of explosive devices, to be served concurrently.

Evidence at her trial indicated that in July 2001, the owner of a gun shop contacted the Denver Police Department and reported that a suspicious woman had attempted to buy gunpowder from him but refused to say why she wanted it. He declined to sell the gunpowder to her and instead notified the police. Through the license plate number he gave them, the police were able to identify the defendant.

Days later a friend of the defendant contacted the police, reporting that the defendant told her she was planning to kill two "pigs," using two pipe bombs. One of the officers was a male correctional officer at the Denver Women's Correctional Facility, where the defendant had been an inmate, and the other was a female officer named "Shelly." The friend testified that the defendant had borrowed a drill and made holes in the end caps of the bomb, and had asked for wooden clothespins to serve as a switch and a soldering iron to connect two small wires, saying that she only needed a few more parts to complete the bomb. The friend also testified that the defendant told her that she had learned how to construct bombs while in prison and had written instructions at her home. In addition, she testified that Lehnert had not only found out extensive family information and the home address of the correctional officer, but also had driven past his house numerous times.

The defendant's friend became concerned that the defendant was actually going to carry out the killings, and she called the police. In addition to telling the police about the defendant's statements and actions, she also told them that she had found in her home a business card for a second gun shop. By inquiring at the second gun shop, the police learned that the defendant had managed to purchase two boxes of shotgun shells.

A search warrant was issued for the defendant's apartment, where police discovered doorbell wire, electrical tape, a nine-volt battery, two metal pipes (which had been scored, weakening them and increasing their destructive potential), two metal end caps (with drilled out center holes), latex gloves, screwdrivers, wire cutters, safety glasses, magnets, two boxes of shotgun shells full of gunpowder, flashlight bulbs (sometimes used as an ignition device for a pipe bomb), and directions to the victim's house. In addition, the police found materials for making false identification cards, the defendant's driver's license, falsified birth certificates, an application for a new social security card, and a falsified high school transcript.

A police detective testified that the materials recovered from the defendant's apart-

ment were explosive parts, capable of being assembled to make a bomb. The detective further testified that the defendant possessed everything required for a pipe bomb except a completed switch and that a switch could probably be made from the wire found at the scene or from a clothespin, which the defendant had tried to acquire from her friend.

At the close of the People's evidence, defense counsel moved for a judgment of acquittal on all counts, arguing that the evidence was insufficient to sustain the attempted first degree murder count because it did not include any evidence from which a reasonable jury could find that the defendant had yet taken a "substantial step" toward committing the murder, as required by the statute. The trial court disagreed and denied the motion. The court of appeals reversed the defendant's conviction for attempted murder, concluding that the evidence was insufficient. Largely because the pipe bombs were not fully assembled and placed in close proximity to the intended victim, the appellate court found that the defendant's conduct did not progress beyond "mere preparation."

The People petitioned this court for a writ of certiorari.

## II.

 A person commits criminal attempt in this jurisdiction if, acting with the kind of culpability otherwise required for commission of a particular crime, he engages in conduct constituting a substantial step toward the commission of that crime. *See* § 18–2–101(1), C.R.S. (2006).[1] The statute immediately makes clear that by "substantial step" it means any conduct that is strongly corroborative of the actor's criminal objective. *See id.* While the remainder of the statute speaks to various related matters, such as the treatment of factual and legal impossibility, complicity, and abandonment, see § 18–2–101(2) to–101(9), C.R.S. (2006), the statutory crime of criminal attempt is complete upon engaging, with the requisite degree of culpability, in conduct that "is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." § 18–2–101(1).

Until 1963, Colorado had not codified the law of attempt in a general statute. In that year, the General Assembly enacted with few modifications the Model Penal Code's proposed codification, including its enumeration of specific kinds of conduct, which would, under certain circumstances, be considered sufficient, as a matter of law, to overcome a motion for judgment of acquittal.[2] *See* ch. 111, sec. 1, § 40–25–1(1), 1963 Colo. Sess. Laws 318, 318–19; *see also* Colo. Legislative Council, Publ'n No. 68, *Report to the Colorado General Assembly: Colorado Criminal*

---

1. Section 18–2–101(1), reads in part:

 A person commits a criminal attempt, if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

2. Section 40–25–1(2), C.R.S. (1963), stated:

 (i) Such person's conduct shall not be held to constitute a substantial step under subsection (1)(d) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negativing the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law:
 (j) Lying in wait for, searching for, or following the contemplated victim of the crime;

(k) Enticing or seeking to entice the contemplated victim of the crime to go to a place contemplated for its commission;
(*l*) Reconnoitering the place contemplated for the commission of the crime;
(m) Unlawful entry of a vehicle, into a structure, into any enclosure, or onto any real property in which or on which it is contemplated that the crime will be committed;
(n) Possession of items or materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances;
(o) Possession, collection, or fabrication of items or materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection, or fabrication serves no lawful purpose of the actor under the circumstances; or
(p) Soliciting an accomplice or an innocent agent to engage in conduct constituting an element of the crime.

*Law* 71 (1962) ("The suggested statute generally follows the substantive definition of attempt contained in the Model Penal Code."); Model Penal Code § 5.01 (Proposed Official Draft July 30, 1962). In 1971, with the adoption of the Colorado Criminal Code, the unadulterated Model Penal Code approach was abandoned in favor of the approach of the proposed Federal Criminal Code. *See* ch. 121, sec. 1, § 40–2–101(1), 1971 Colo. Sess. Laws 414, 414–15; *People v. Frysig,* 628 P.2d 1004 (Colo.1981) ("The original formulation of criminal attempt in the Colorado Criminal Code was patterned after proposed federal legislation."); The Nat'l Comm'n on Reform of Fed. Criminal Laws, *Study Draft of a New Federal Criminal Code* § 1001, at 61–62 (1970). Although different in certain respects, the 1971 Colorado statute, which remains largely unchanged today,[3] retained a number of key features from the Model Penal Code proposal, most notably its description of the proscribed conduct as some act strongly corroborative of the actor's criminal purpose.

Prior to the enactment of a general criminal attempt statute, the sporadic treatment of attempt by this court focused largely on the dangerousness of the actor's conduct in terms of its proximity to, or the likelihood that it would result in, a completed crime. Emphasizing that neither preparation alone nor a "mere intention" to commit a crime could constitute criminal attempt, we described an attempt as "any overt act done with the intent to commit the crime, and which, except for the interference of some cause preventing the carrying out of the intent, would have resulted in the commission of the crime." *Lewis v. People,* 124 Colo. 62, 67, 235 P.2d 348, 350 (1951). By also making clear, however, that the overt act required for an attempt need not be the last proximate act necessary to consummate the crime, *see, e.g., Johnson v. People,* 174 Colo. 413, 417,

484 P.2d 110, 111–12 (1971), we implicitly acknowledged that acts in preparation for the last proximate act, at some point attain to criminality themselves. The question of an overt act's proximity to, or remoteness from, completion of the crime therefore remained, without detailed guidance, a matter for individual determination under the facts of each case. *See Lewis,* 124 Colo. at 66–67, 235 P.2d at 350.

By contrast, the statutory requirement of a "substantial step" signaled a clear shift of focus from the act itself to "the dangerousness of the actor, as a person manifesting a firm disposition to commit a crime." *See* Model Penal Code § 5.01 cmt. 1 (1985); *cf. People v. Thomas,* 729 P.2d 972, 976 (Colo. 1986) ("[T]he probability of future dangerousness that has given rise to the justified legislative judgment that criminal attempt liability should be imposed...."). While some conduct, in the form of an act, omission, or possession, see § 18–2–101(1), is still necessary to avoid criminalizing bad intentions alone; and the notion of "mere preparation"[4] continues to be a useful way of describing conduct falling short of a "substantial step;" the ultimate inquiry under the statutory definition concerns the extent to which the actor's conduct is strongly corroborative of the firmness of his criminal purpose, rather than the proximity of his conduct to consummation of the crime. *See* § 18–2–101(1). Even more directly than the Model Penal Code formulation, which makes strong corroboration of criminal purpose a necessary but not sufficient condition of a substantial step, *see* Model Penal Code § 5.01(2)(1985) (not a substantial step "unless" strongly corroborative), the statute adopted by this jurisdiction in 1971 actually *equates* a substantial step with "any conduct that is strongly corroborative of the firmness of his purpose to complete the commission of the offense." § 18–2–101(1).

**3.** While not at issue here, some changes have been made to the attempt statute, chief among them, the deletion in the 1977 amendment of the word "intentionally," the word formerly used to describe the mental state with which the substantial step must be taken, and substitution of "purpose" for "intent" in describing the actor's criminal objective. *See Frysig,* 628 P.2d at 1009–10.

**4.** Interestingly, although the term "overt act" appears in the statutory definition of "Conspiracy," *see* § 18–1–201, C.R.S. (2006), and conduct beyond "mere preparation" has at times been referred to as a requirement of attempt, *see People v. Washington,* 865 P.2d 145, 148 (Colo. 1994), neither has ever actually appeared in the criminal attempt statute of this jurisdiction.

The question whether particular conduct constitutes a substantial step, of course, remains a matter of degree and can no more be resolved by a mechanical rule, or litmus test, than could the question whether the actor's conduct was too remote or failed to progress beyond mere preparation. The requirement that the defendant's conduct amount to a "substantial step," statutorily defined as it now is, however, provides the fact-finder with a much more specific and predictable basis for determining criminality. Rather than leaving to the fact-finder (as well as the court evaluating the sufficiency of evidence) the task of resolving the policy choices inherent in deciding when acts of preparation have become criminal, the statutory requirement of a substantial step simply calls for a determination whether the actor's conduct strongly corroborates a sufficiently firm intent on his part to commit the specific crime he is charged with attempting. *See* § 18–2–101(1).

By actually defining a "substantial step" as "any conduct ... which is strongly corroborative of the firmness of the actor's purpose," the Colorado statute has no need to further enumerate particular circumstances in which strongly corroborative conduct may constitute a substantial step. Conduct strongly corroborative of the firmness of the actor's criminal purpose is sufficient in itself. Drawn as they are largely from decisional law, however, the acts enumerated in the former statute and Model Penal Code, such as searching out a contemplated victim, reconnoitering the place contemplated for commission of a crime, and possessing materials specially designed for unlawful use and without lawful purpose, remain useful examples of conduct considered capable of strongly corroborating criminal purpose, and in those instances where they do, of being sufficient to establish criminal attempt. *See United States v. Rahman,* 189 F.3d 88, 128–29 (2d Cir.1999) (finding the factors listed in the Model Penal Code relevant to the existence of sufficient evidence of a "substantial step" in attempted bombing prosecution); *see also United States v. Haynes,* 372 F.3d 1164, 1168–69 (10th Cir.2004); *United States v. Pratt,* 351 F.3d 131, 134–35 (4th Cir.2003); *United States v. Duran,* 96 F.3d 1495, 1507–

08 (D.C.Cir.1996); *United States v. Mazzella,* 768 F.2d 235, 239 (8th Cir.1985); *United States v. Brown,* 604 F.2d 347, 350 (5th Cir. 1979).

### III.

A motion for judgment of acquittal may be granted only if the relevant evidence, both direct and circumstantial, when viewed as a whole in the light most favorable to the prosecution, is not substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *See People v. Bennett,* 183 Colo. 125, 130, 515 P.2d 466, 469 (1973); *see also Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005); *People v. Dunlap,* 975 P.2d 723, 752 (Colo.1999); *People v. Noga,* 196 Colo. 478, 480, 586 P.2d 1002, 1003 (1978).

According to this standard, there was evidence at the defendant's trial from which the jury could find that she repeatedly articulated her intent to kill two law enforcement officers with pipe bombs. Unlike many prosecutions for attempt, it was therefore unnecessary for the jury to be able to infer the defendant's criminal intent or purpose from her conduct. The jury need only have been able to find that the defendant committed acts that were strongly corroborative of the firmness of that purpose.

There was also evidence from which the jury could reasonably find that the defendant was determined to make the pipe bombs she needed to implement her plan and that she made substantial efforts and overcame hurdles to do so. Over many days she not only managed to acquire almost all of the materials required to create a bomb but also feloniously altered them to suit her criminal purpose, conduct for which she was separately convicted of possessing explosive or incendiary parts. When rebuffed in her attempt to acquire gunpowder directly from one gun shop, for example, she found a way to do so indirectly from another gun shop. There was testimony from which the jury could believe that she had eventually succeeded in acquiring all but a few necessary materials and that she had already acquired the draw-

ings and written instructions necessary for final assembly.

Beyond the tenacity exhibited by the defendant in actually fabricating the bombs, her friend testified that she also had gathered significant personal information about one of her intended victims, including his address and information about his children and the car his family drove. There was evidence that she had reconnoitered his house and neighborhood more than once, reportedly being forced to leave on one occasion after being noticed. Finally there was evidence from which the jury could believe that she was simultaneously producing forged documents, which would permit her to assume false identities for purposes including the purchase of additional weapons.

The complexity of some criminal schemes, and the extent and uniqueness of the preparatory acts required to implement them without detection, lend themselves, by their very nature, to corroborating the actor's firmness of purpose. Regardless of the fact that the defendant was arrested before producing operational bombs or placing them within striking range of her victims in this case, there was in fact an abundance of evidence of her determined and sustained efforts to implement her plan, which could be found by reasonable jurors to be strongly corroborative of the firmness of her purpose to commit murder. Nothing more was required.

## IV.

Therefore, the judgment of the court of appeals is reversed, and the case is remanded for consideration of any remaining issues.

Justice EID does not participate.