2016 COA 68

**The PEOPLE of the State of Colorado, Plaintiff–Appellee and Cross–Appellant,**

v.

**Ronino Reyes GALANG, Defendant–Appellant and Cross–Appellee,**

**Court of Appeals No. 12CA1907**

Colorado Court of Appeals, Div. II.

Announced May 5, 2016

Cynthia H. Coffman, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

George H. Brauchler, District Attorney, Richard H. Orman, Senior Deputy District Attorney, Centennial, Colorado, for Cross–Appellant

Douglas K. Wilson, Colorado State Public Defender, Michael C. Mattis, Deputy State Public Defender, Denver, Colorado,. for Defendant–Appellant and Cross–Appellee

Opinion by JUDGE DAILEY

¶ 1 Defendant, Ronino Reyes Galang, appeals the judgment of conviction entered on jury verdicts finding him guilty of extortion, criminal impersonation, stalking, and harassment. The People cross-appeal the trial court's judgment acquitting him of computer crime. We affirm the judgment of conviction and disapprove the trial court's judgment of acquittal.

## I. Background

¶ 2 In 2004, the female victim came to the United States from the Philippines. That same year, she and defendant met at work in California and developed a "very close" friendship. In 2007, the victim moved to

Colorado and got married while defendant stayed in California with his wife. Despite the distance, the victim visited defendant approximately every three months when she was in California to see family, and the two communicated via phone and e-mail about twice per week.

¶3 In June 2011, the victim began receiving e-mails from an unknown person using a Yahoo e-mail address identifying himself or herself as "Holycrap Imbatman" (Batman). In the first e-mail, Batman (1) demanded the victim send photographs and videos of herself doing various sexual acts, including acts alone and with her then-boyfriend; (2) threatened to tell immigration officials that she had "married for papers"; and (3) threatened to tell her then-boyfriend that she was having sex with other men.

¶4 Suspecting that defendant's wife had sent this as well as other e-mails from Batman, the victim reported the e-mails to the Douglas County Sheriff's Office. A detective then assumed control of the victim's e-mail account, corresponded with Batman as if the detective were the victim, and concocted a sting operation to discover Batman's true identity. In his role as the victim, the detective forwarded defective CDs to the address supplied by Batman—defendant's address. After informing the "victim" that the CDs were broken or blank, Batman agreed, in lieu of the photos and videos, to meet her at a hotel in California and to bring (per the victim's request) champagne and Diet Mountain Dew. Defendant appeared at the designated time and hotel room, carrying an orange backpack and asking for the victim. Subsequently, the local police arrested defendant and recovered champagne and Diet Mountain Dew from the backpack.

¶5 Defendant was charged in the case. At trial, the People presented evidence of these facts, as well as evidence that (1) in 2010, the victim had refused defendant's requests to send him naked pictures of herself; and (2) according to a digital forensics and networking expert, the "Batman" Yahoo e-mail account was created at the business where defendant worked.

¶6 Following the close of the People's evidence, the trial court granted defendant's request for a judgment of acquittal on the computer crime charge. With regard to the remaining charges, defendant neither testified nor presented any witnesses on his behalf. During closing argument, however, defense counsel denied the charges, asserting that, rather than defendant, it was defendant's wife who "ha[d] a motive to get revenge against her husband" and "to humiliate [the victim]" because defendant's wife "couldn't tolerate the fact that [defendant] was friends with [the victim]." [1]

¶7 The jury found defendant guilty on four charges, and the trial court sentenced him to four years' probation, conditioned, in part, on his serving ninety days in jail.

## II. Defendant's Appeal: Admission of Evidence of Defendant's Previous Requests for "Naked Pictures" of the Victim

¶8 Defendant contends that the trial court erred in admitting evidence that the victim had refused his previous requests for pictures depicting her naked. We disagree.

¶9 The trial court denied defendant's motion in limine to exclude "statements from the alleged victim ... that [defendant] previously asked her to send him naked photos of herself." In doing so, the court found the evidence was admissible under a theory of res gestae because it "forms an integral and natural part of the crime and is relevant ... for a number of different purposes including identification, motivation to allegedly contact the victim here in an unidentified manner given her refusal to send him nude photographs in the past," and defendant's "interest in the victim sexually or emotionally...."

¶10 On appeal, defendant contends that the trial court erred in admitting evidence of the requests because they (1) "w[ere] obviously not 'contemporaneous' with the 'offense charged' because [they] occurred approximately one year before the charged offense[s]" and (2) "did not provide a background for the offense charged because [they] occurred under different circum-

---

1. In this regard, defense counsel pointed out that defendant's wife worked with defendant at the business from which the Batman Yahoo e-mail account was created.

stances and the prosecutor did not establish specific dates for the uncharged incident."

¶ 11 Significantly, defendant did not contest the admissibility of the evidence on these grounds in the trial court. Consequently, reversal would not be warranted in the absence of plain error. *See People v. Honeysette*, 53 P.3d 714, 717 (Colo.App.2002) (applying the plain error standard of review where the claim of error on appeal was different from the objection at trial); *cf. Udemba v. Nicoli*, 237 F.3d 8, 14–15 (1st Cir.2001) ("It is a bedrock rule that a party who unsuccessfully objects to the introduction of evidence on one ground cannot switch horses in midstream and raise an entirely new ground of objection on appeal without forfeiting the usual standard of review.").

¶ 12 Plain error is error that is obvious, substantial, and "so undermine[s] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Osorio-Bahena*, 2013 COA 55, ¶ 69, 312 P.3d 247.

¶ 13 Here, we perceive no error, much less plain error.

¶ 14 "The Colorado Rules of Evidence strongly favor the admission of relevant evidence." *People v. Brown*, 2014 COA 155M-2, ¶ 22, 360 P.3d 167. "*Res gestae* is a theory of relevance which recognizes that certain evidence is relevant because of its unique relationship to the charged crime." *People v. Greenlee*, 200 P.3d 363, 368 (Colo. 2009).

¶ 15 The res gestae theory of relevance is based on the idea that "[c]riminal occurrences do not always take place on a sterile stage," and that where the events leading up to the crimes charged are part of the scenario that explains the setting in which the crimes occurred, "no error is committed by permitting the jury to view the criminal episode in the context in which it happened." *People v. Lobato*, 187 Colo. 285, 289–90, 530 P.2d 493, 496 (1975); *see People v. Quintana*, 882 P.2d 1366, 1373 (Colo.1994) (Res gestae evidence encompasses "[e]vidence of other offenses or acts that is not extrinsic to the offense charged, but rather, is part of the criminal episode or transaction with which the defendant is charged ... to provide the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred. Such evidence is generally 'linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.' ") (citations omitted).

¶ 16 Although several cases address res gestae evidence in terms of its contemporaneity to the charged events, *see People v. Lehnert*, 131 P.3d 1104 (Colo.App.2005), *rev'd*, 163 P.3d 1111 (Colo.2007); *People v. Rollins*, 892 P.2d 866 (Colo.1995), res gestae evidence "includes not just evidence of other acts that were substantially simultaneous in time and circumstance with the crime charged." *People v. Gee*, 2015 COA 151, ¶ 32, 371 P.3d 714, 721 (quoting *People v. Agado*, 964 P.2d 565, 569 (Colo.App.1998) (Briggs, J., specially concurring), and citing several other cases). "[A]n act 'somewhat remote in time' from the charged crime nevertheless is res gestae if the two are 'inextricably intertwined' such that the former 'forms an integral and natural part of an account of the crime.' " *Id.* at ¶ 33 (quoting *People v. Fears*, 962 P.2d 272, 280 (Colo.App. 1997)).

¶ 17 As a preliminary matter, we note that nothing in the record supports defendant's assertion that his requests occurred approximately one year before the charged crimes. The victim testified that defendant asked her for "naked pictures" in 2010, not specifically *July* 2010. Additionally, despite defendant's claim that there was only one request in 2010, the victim's testimony suggests that defendant made more than one request for naked pictures:

> In the beginning he will joke around, like "Hey, maybe you can send me a naked picture.["] ... And then after his wife gave birth to their first kid, it just changed everything.... He's in a dry spell because his wife won't sleep with him.... [T]hat's when he will ask me for naked pictures.

Thus, the victim testified that defendant asked her for naked pictures at least twice in

2010—before and after defendant's wife gave birth to their child.

¶ 18 Regardless of how many times defendant made such requests, incidents occurring some months or even a year before the charged crimes are not, in our view, necessarily too remote to qualify as res gestae evidence. *See, e.g., People v. Miranda*, 2014 COA 102, ¶¶ 52-54, —— P.3d —— (acts of grooming that occurred over the course of two years were not too remote, but rather showed the charged offenses did not occur "out of the blue"); *People v. Thomeczek*, 284 P.3d 110, 115 (Colo.App.2011) (evidence of an incident occurring three months before the charged crime was properly admitted as res gestae evidence despite the "temporal separation of the two events"); *People v. Gladney*, 250 P.3d 762, 768 (Colo.App.2010) ("[W]e have held that conduct occurring months ... before a charged crime may be admissible as res gestae evidence."); *Fears*, 962 P.2d at 280 (the defendant's participation in a robbery, which occurred approximately nine months before the charged crimes, was "somewhat remote in time" but still "inextricably intertwined in such a way that" it "was admissible as res gestae evidence" and "part of the criminal episode").

¶ 19 We also disagree with defendant's second argument that the requests fail the second part of our analysis because they occurred "under different circumstances." Our case law does not require that res gestae evidence be similar to the charged offenses in order to be admissible; rather, the evidence only must be "inextricably intertwined" to "complete the description of the criminal episode for the jury." *People v. Coney*, 98 P.3d 930, 933 (Colo.App.2004) (admitting res gestae evidence of the defendant's drug arrests because they provided necessary background for the jury to consider in the defendant's murder trial); *see also, e.g., Fears*, 962 P.2d at 280 (evidence of robbery committed at a time and place different from the charged murders was admissible as res gestae to give the murders context).

¶ 20 Here, as the trial court noted, the requests show defendant's "interest in the victim sexually or emotionally" and describe the relationship between defendant and the victim. Moreover, the evidence "forms an integral and natural part of the crime" because it shows why defendant would "allegedly contact the victim here in an unidentified manner given her refusal to send him nude photographs in the past."

¶ 21 Together, these considerations aided the jury in determining who would want nude photographs of the victim and why defendant would resort to hiding his identity behind a fictitious e-mail name to achieve his goal. Without this information, the jury would have been misled into believing the victim had received the e-mails out of the blue rather than after defendant had asked for such photographs from—and been refused by—her on at least two prior occasions.

¶ 22 For these reasons, defendant's prior requests for nude photographs of the victim fit the classic definition of res gestae: they were part of a scenario that explained the setting in which the crimes occurred and were necessary to provide the fact finder with a full and complete understanding of a possible motive on defendant's part for committing them. *See Agado*, 964 P.2d at 567 (evidence of a recent argument between the defendant and the victim was admissible as res gestae because it gave "a fuller understanding of the events surrounding the crime"); *Fears*, 962 P.2d at 280 (finding evidence was admissible as res gestae to show the charged crimes were not "simply random").

¶ 23 To be sure, res gestae evidence is subject to exclusion under CRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *See Quintana*, 882 P.2d at 1374.[2] "However, in assessing the admissibility of [res gestae] evidence on appeal, we must assume the maximum probative value of the evidence [at issue], and the minimum prejudice reasonably to be expected, and we must accord

---

**2.** Evidence is "unfairly" prejudicial if it has "an undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *Masters v. People*, 58 P.3d 979, 1001 (Colo.2002) (quoting *People v. Dist. Court*, 785 P.2d 141, 147 (Colo.1990)).

substantial deference to the trial court's decision on this issue." *Gladney*, 250 P.3d at 768.

¶ 24 Viewed from this perspective, we cannot conclude that the risk of unfair prejudice substantially outweighed the probative value of the evidence. While evidence that defendant asked the victim for "naked photos" may have had some prospect for unfair prejudice, it was also highly probative for explaining who would have created the e-mail account and gone to such great lengths to obtain the photos (and videos) by deception.

¶ 25 Accordingly, we perceive no error in the trial court's admission of the evidence challenged on appeal.

### III. The People's Cross–Appeal: The Court's Judgment of Acquittal on the Computer Crime Count

¶ 26 In their cross-appeal, the People contend that the trial court erred in granting a judgment of acquittal on the computer crime count. We agree.

¶ 27 Defendant was charged with and prosecuted for computer crime under section 18–5.5–102(1)(b), C.R.S.2015, which states:

(1) A person commits computer crime if the person knowingly:

. . . .

(b) Accesses any computer, computer network, or computer system, or any part thereof for the purpose of devising or executing any scheme or artifice to defraud[.]

¶ 28 The court found that the prosecution had presented sufficient evidence to satisfy the requirements of this provision. However, the court expressed its concern that "you can't have a crime if you don't have a penal-

ty, and here we don't have a penalty for this crime."

¶ 29 The court concluded that there was no penalty, and thus no crime, by

- examining the penalty provisions of the computer crime statute, the least of which, as applicable here, would punish the offense as a class 2 misdemeanor "if the loss, damage, value of services, or thing of value taken, or cost of restoration or repair caused by a violation of this section is less than five hundred dollars," Ch. 435, sec. 4, § 18–5.5–102(3)(a), 2008 Colo. Sess. Laws 2230;[3] and

- determining that there had been no evidence presented of loss or damage to the victim.

¶ 30 The People correctly contend that, under section 18–5.5–102(1)(b), computer fraud is committed when a person knowingly "access[es] a computer system for [the] 'purpose' of 'devising' or 'executing' the scheme or artifice to defraud," regardless of whether the victim suffered any loss or damage. *See, e.g., United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir.1994) ("[T]he victims of the scheme need not have been injured."); *Commonwealth v. Murgallis*, 753 A.2d 870, 873 (Pa.Super.Ct.2000) ("The offense of unlawful use of computer is committed where a person accesses a computer network with the intent to devise or execute any scheme or artifice to defraud by means of false or fraudulent pretense, representations, or promises. The actual obtaining or withholding of the property is not an element of unlawful use of a computer.").

¶ 31 But as we read the record, the court did not disagree with the People on this point.[4] Rather, it looked to the penalty pro-

---

**3.** This was the penalty provision in effect at the time of the alleged offense. In 2014, the General Assembly amended the statute's penalty provision. As pertinent here, it created a class 1 petty offense for a loss, damage, or value of services taken, of less than fifty dollars. § 18–5.5–102(3)(a)(I), C.R.S.2015.

**4.** Indeed, the People presented sufficient evidence from which the jury could have inferred that defendant accessed a computer system to extort the victim into providing nude pictures of herself; his scheme involved the deceptive act of explicitly disavowing being himself in his e-mails to the victim. *See Huff v. United States*, 301 F.2d 760, 765 (5th Cir.1962) ("The mere fact that extortion may constitute one aspect of the transaction does not insulate the fraudulent representations and plan from prosecution as a scheme to defraud."); *see also United States v. Colton*, 231 F.3d 890, 901 (4th Cir.2000) ("[A] 'scheme or artifice to defraud' ... can be shown by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or avert further inquiry into a material matter.").

visions for computer crime and found none were applicable because they required a showing—absent here—of damage or loss to the victim. There being no applicable penalty, the court reasoned, there could be no crime. *See generally* 1 Wayne R. LaFave, *Substantive Criminal Law* § 1.2 (2d ed. 2003) ("[A] crime is made up of two parts, forbidden conduct and a prescribed penalty. The former without the latter is no crime."); *see also Olinyk v. People*, 642 P.2d 490, 493 (Colo.1982) ("A criminal statute must include a penalty for committing the acts proscribed, and a criminal prohibition without a penalty is unenforceable.").

¶ 32 Whether the court was correct depends on how the computer crime penalty provision of section 18–5.5–102(3)(a) is interpreted. At the time of the alleged offense, that section provided, as pertinent here, that

> *if the loss, damage, value of services, or thing of value taken, or cost of restoration or repair caused by a violation of this section is less than five hundred dollars, computer crime is a class 2 misdemeanor;* if five hundred dollars or more but less than one thousand dollars, computer crime is a class 1 misdemeanor; if one thousand dollars or more but less than twenty thousand dollars, computer crime is a class 4 felony; if twenty thousand dollars or more, computer crime is a class 3 felony.

2008 Colo. Sess. Laws at 2230 (emphasis added).

¶ 33 The trial court interpreted the penalty provision of section 18–5.5–102(3)(a) as requiring at least *some* damage, loss, or injury to the victim. We read that provision differently.

¶ 34 Statutory interpretation presents a question of law, which we review de novo. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000). In interpreting the computer crime penalty provision, our task is to ascertain and give effect to the intent of the General Assembly. *Dubois v. People*, 211 P.3d 41, 43 (Colo.2009). In doing so, "[w]e presume that the General Assembly intends

a just and reasonable result that favors the public interest over any private interest, and we will not construe a statute either to defeat the legislative intent or to lead to an absurd or illogical result." *People v. Reed*, 932 P.2d 842, 843 (Colo.App.1996); *see also People v. Smith*, 254 P.3d 1158, 1161 (Colo.2011) ("This recognition of the legislature's overall intent must prevail over a literal interpretation of the statute that would lead to a contrary result.").

 ¶ 35 The "scheme or artifice to defraud" provision of section 18–5.5–102(1)(b) uses the same language as that used in the federal mail, wire, and bank fraud statutes. *See* 18 U.S.C. §§ 1341, 1343, 1344 (2012),[5] "Interpretations of federal law are persuasive in interpreting like state statutes." *People v. Rivera*, 56 P.3d 1155, 1163 (Colo.App. 2002).

¶ 36 A scheme or artifice to defraud has been held to include "any plan, pattern or cause of action, including false and fraudulent pretenses and misrepresentations, intended to deceive others in order to obtain something of value, such as money...." *United States v. Chacko*, 169 F.3d 140, 148 (2d Cir.1999) (quoting *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir.1987)) (discussing bank fraud). But the "scheme to defraud need not have been successful or complete" and "the victims of the scheme need not have been injured," so long as "'some actual harm or injury was *contemplated* by the schemer.'" *D'Amato*, 39 F.3d at 1257 (quoting *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180 (2d Cir.1970)); *accord United States v. Jain*, 93 F.3d 436, 441 (8th Cir.1996); *see also United States v. Stouffer*, 986 F.2d 916, 922 (5th Cir.1993) ("The element of fraudulent intent, in turn, requires a showing that defendants contemplated or intended some harm to the property rights of their victims.").

 ¶ 37 The underlying purpose of section 18–5.5–102(1)(b), and for that matter sections 18–5.5–102(1)(a) and 18–5.5–102(1)(f),[6] is to preserve the use of computers

---

**5.** The same language is used in many state statutes as well. *See generally* Susan W. Brenner,

*Fraud and Theft, in* 2 Data Security and Privacy Law § 15:25 (Ronald N. Weikers ed., 2015).

**6.** These subsections, on their faces, do not re-

for legitimate ends. *Cf. Horman v. United States*, 116 F. 350, 351–52 (6th Cir.1902) (discussing the purpose of the federal mail fraud statute). "Obviously the statute is dealing with the wrongful purpose to injure, with which the scheme or artifice must be connected.... If the scheme or artifice in its necessary consequence is one which is calculated to injure another, to deprive him of his property wrongfully, then it is to defraud within the meaning of the statute." *Id.* at 352–53; *accord United States v. Skeddle*, 989 F.Supp. 873, 884–85 (N.D.Ohio 1997).

¶ 38 We acknowledge that section 18–5.5–102(3)(a) appears to tie the penalties for computer crime to concepts of loss, damage, or value. But in our view, any interpretation of the provision as requiring, as the predicate of a penalty, a showing of actual rather than merely contemplated injury undermines the very purpose of sections 18–5.5–102(1)(a), (b), and (f): to preserve the use of computers for legitimate ends.

¶ 39 The language of the penalty provision can be applied in a manner consistent with the purposes underlying these provisions— that is, where the victim suffered no injury, his or her "loss, damage, value of services, or thing of value taken, or cost of restoration or repair" is, of necessity, "less than five hundred dollars." So interpreted, the penalty provision of section 18–5.5–102(3)(a) can be applied to the facts of this case, and, therefore, the court erred in ruling that there was no "enforceable" crime.

■ ¶ 40 Consequently, we disapprove of the court's order granting a judgment of acquittal on the computer crime count.[7]

## IV. Conclusion

¶ 41 The judgment of conviction is affirmed and the judgment of acquittal is disapproved.

JUDGE GRAHAM and JUDGE ASHBY concur.

---

quire any resulting injury either. *See* § 18–5.5–102(1)(a) ("A person commits computer crime if the person knowingly .... [a]ccesses a computer, computer network, or computer system or any part thereof without authorization; exceeds authorized access to a computer, computer network, or computer system or any part thereof; or uses a computer, computer network, or computer system or any part thereof without authorization or in excess of authorized access...,"); § 18–5.5–102(1)(f) ("A person commits computer crime if the person knowingly ... [c]auses the transmission of a computer program, software, information, code, data, or command by means of a computer, computer network, or computer

system or any part thereof *with the intent to cause damage to or to cause the interruption or impairment ... or that actually* causes damage to or the interruption or impairment of the proper functioning of any computer, computer network, computer system, or part thereof....") (emphasis added).

7. When, as here, "jeopardy has ... attached and a judgment of acquittal has been granted at the defendant's request following the close of the prosecution's case, the defendant cannot be tried again on the same charge." *People v. Jackson*, 972 P.2d 698, 700 (Colo.App.1998).