JUSTICE COATS, dissenting. ¶51 I do not concur in the majority’s affir-mance of the court of appeals’ judgment below both because I consider its rationale for doing so unconvincing and because I believe the danger it envisions from not doing so to be illusory. More importantly, I believe that the majority’s rationale is not only irreconcilable with the theory of attempt liability adopted by the General Assembly for this jurisdiction almost a half century ago but is additionally mischievous, both by reviving a discredited and largely moribund equal protection theory once current in the jurisdiction and by unapologetically infringing on charging prerogatives constitutionally allocated to a different branch of government altogether. I therefore respectfully dissent and briefly outline my concerns, ¶52 The majority finds there to have been insufficient evidence to reach a'jury on the inchoate offenses of attempted reckless manslaughter and attempted reckless second degree assault, based on its understanding that their elements necessarily include proof of a substantial step toward causing an unjustifiable risk of death or serious bodily injury to another “discernible” person, as distinguished from simply “another person”; and that the testimony at trial failed to sufficiently evidence, as fate would have it, that a particular, “discernible” person actually wandered within range of the defendant’s drunken and reckless driving, so as to find himself at an unjustifiable risk of losing life or limb. In support of this conclusion, the majority offers three reasons: first, that the “plain language” of the underlying offenses requiring death or serious bodily to “another person” would effectively be read out of the respective elemental statutes if the inchoate offense of attempting to commit either of them-did not mandate proof that a particular, discernible person was victimized; second, that the People failed to cite any prior case in which a conviction for one of these' offenses was had in the absence of some discernible person having been put at risk; and third, that a failure to require the victimization of a discernible person would permit “every DUI and innumerable other driving offenses” to be charged as attempted reckless manslaughter or attempted second degree assault, an eventuality the majority considers to be absurd and therefore to be avoided as a matter of statutory construction. ¶53 'Taken in that order, the first reason could not more clearly expose the majority’s failure to grasp the nature of attempt liability in this jurisdiction. We have • previously explained, in great detail, that with the adoption of a general attempt statute in the 1972 Colorado Criminal Code, we abandoned any notion of criminal liability based on the proximity of the defendant’s conduct to the successful completion of an underlying offense, in favor of a scheme assigning criminal liability on the basis of conduct by the defendant that is strongly corroborative of the firmness of his purpose to commit that crime. See People v. Lehnert, 163 P.3d 1111, 1113-14 (Colo. 2007). By the same token, however, we made clear more than thirty years ago, and have reemphasized many times since, that attempt liability,is not limited to specific intent crimes because the purpose, or intent, at issue in attempt liability does not include any intent that a proscribed result occur. See People v. Thomas, 729 P.2d 972, 975-76 (Colo. 1986). Rather it requires only that, acting with the kind of culpability otherwise required for commission of the underlying offense, including acting recklessly, the actor engage in conduct constituting a substantial step toward performing acts which, if completed, would constitute the underlying offense. Id at 974 (explaining People v. Frysig, 628 P.2d 1004 (Colo. 1981)). With regard to the crime of attempted reckless manslaughter, in particular, we explained that the purpose of which the actor’s conduct must be strongly corroborative is merely the purpose “to complete those acts that will produce a substantial and unjustifiable risk of death of another.” Id. at 975. JT54 Although the substantive offense of reckless manslaughter is defined in terms of causing the death of another person, and therefore a particular person must of course have been killed for the crime to be complete, it does, not follow that a particular person must have been endangered, or .have come close to being killed, for purposes of the inchoate offense of attempted reckless manslaughter. As we expressly held in Thomas, to incur attempt liability for reckless manslaughter the actor need only recklessly perform an act that is strongly corroborative of his purpose to complete those acts that will produce a substantial and unjustifiable risk of death. Id. By asserting that for attempt liability to attach, some “discernible” person must be victimized, the majority literally stands the reasoning of Thomas on its head and undermines the conceptual justification for attempt liability, especially for other than specific intent crimes, under which we have operated for more than a quarter century. Rather than conduct that actually endangers, or comes sufficiently close to killing or causing serious bodily injury to another person, Thomas makes clear that it is an act evidencing the firmness of the actor’s purpose to engage in conduct that would constitute the commission of the crime if it were to result in the proscribed outcome upon which attempt liability rests. Id. ¶55 Although the majority suggests that today’s holding does not amount to a departure from Thomas, in virtually the same breath it expressly relies on Justice Dubof-sky’s special concurrence in that case, in which she again advocated for the proximity, dr index of dangerousness, theory she put forward in People v. Krovarz, 697 P.2d 378, 381 n.9 (Colo. 1985), which was squarely rejected by the Thomas majority. Criticizing the breadth of the majority’s construction of the attempt statute, the special concurrence argued that attempt liability for reckless manslaughter should be limited to cases in which it can be shown that someone in particular was actually endangered. Ultimately, however, that position did not carry the day, with the majority of the court holding instead that attempt liability for reckless manslaughter is imposed ⅛ this jurisdiction simply for conduct strongly corroborative of the actor’s purpose to engage in conduct that would constitute the commission of the crime if the proscribed result were to occur. ¶56 As for the hiajority’s second reason, I consider no more required for its rebuttal than a clear articulation of the reason itself. Surely the failure to cite a prior decision of this court “on all fours” with a proposition advanced by a party — as distinguished from failing to rebut a prior decision of this court holding the opposite — can signify at most that the proposition has not yet been squarely addressed, but not that it in any way lacks logical force. Whether the proposition remains unaddressed because it is so clearly wrong as to never before have been advanced or because it is so clearly right as to neyer before have required a defense, or for some other reason altogether, cannot be determined from a mere absence of case authority directly on point. ¶57 The majority’s third reason suggests reliance on a preference in statutory construction for avoiding constitutional doubt, Because I consider the unique Colorado equal protection doctrine upon which the majority relies to be highly questionable; the majority’s articulation of it to be inaccurate; and any further extension of it to be undesirable, I will address what I consider the flaws in the majority’s reasoning accordingly. ¶58 Initially, I find it unfortunate that the majority breathes new life into this state constitutional doctrine, which has long been roundly criticized and rejected by the United States Supreme Court as involving no móre than a matter of prosecutorial discretion, see United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (Marshall, J,, writing for a unanimous court), and has, in more recent years, been limited by this court practically out of existence, see Dean v. People, 2016 CO 14, ¶¶ 14-15, 366 P.3d 593, 597-98. Following Batchelder, those jurisdictions upon which we had relied to find that equal protection prohibited more severe punishment for the commission of one crime than was prescribed for the commission of another crime proscribing the identical conduct, all accepted the logical force of the Supreme Court’s reasoning and retreated from their prior pronouncements on the subject. See Hart v. State, 702 P.2d 651, 659-663 (Alaska Ct. App. 1985); Sheriff, Clark Cty. v. Killman, 100 Nev. 619, 691 P.2d 434, 436 (1984); City of Klamath Falls v. Winters, 289 Or. 757, 619 P.2d 217, 228-231 (1980); State v. Cissell, 127 Wis.2d 205, 378 N.W.2d 691, 695-700 (1985). By contrast, without offering any meaningful difference between the language of our own and the applicable federal constitutional provision, or any considerations unique to this jurisdiction, cf. Curious Theatre v. Colo. Dept. of Pub. Health & Env’t, 220 P.3d 544, 551 (Colo. 2009) (articulating more current thinking concerning the different interpretations of similar state and federal constitutional provisions), other than the fact .that this court alone is the ultimate arbiter of the state constitution, this court, in the abs.ence of an equal protection clause of our own, interpreted our due process clause to countenance this unique, non-federal equal protection doctrine. See People v. Estrada. 198 Colo. 188, 601 P.2d 619, 621 (1979). No challenge on the basis of this doctrine, however, has succeeded in this court for more than a quarter century and, even then, such challenge has succeeded only with regard to clear legislative inadvertence in adopting or amending one statute in such a way as to make it coterminous with an existing statute mandating a different penalty. Smith v. People, 852 P.2d 420, 423 (Colo. 1993); People v. Mumaugh, 644 P.2d 299, 300-01 (Colo. 1982). Whether or not it is time to abandon the doctrine altogether, it seems clear that this court’s unwillingness to find identical proscriptions (at least until today) has left it as merely a burden for the lower courts of the jurisdiction to entertain and reject when raised. ¶59 In any event, however, as strict as we have been in forcing legislative consistency in criminal proscriptions, we have never suggested that equal protection is violated by charging, convicting, and sentencing a defendant for a more serious offense merely because his same conduct is also proscribed by a less serious offense. Unless it can be shown that the legislature intended to limit liability for particular conduct, as with certain regulatory offenses, People v. Bagby, 734 P.2d 1059, 1061-62 (Colo. 1987), the decision to prosecute the same conduct under a general, rather than a more specific, proscription has always remained simply a matter of prosecu-torial discretion, People v. Czajkowski, 193 Colo. 352, 568 P.2d 23, 25-26 (1977). Even in this jurisdiction, only if the elements of one offense are indistinguishable from the elements of another prescribing a lesser punishment is equal protection implicated. ¶60 The majority indicates that but for its imputation of a “discernible” victim requirement, attempted reckless manslaughter and attempted reckless second degree, assault would be indistinguishable from DUI and a host of other misdemeanor driving offenses. However, none of these driving offenses implicates in any way a substantial risk of causing death or serious bodily injury. But for. its discernible victim requirement, the majority would equate attempted reckless manslaughter with reckless driving, in particular; however, driving a motor vehicle with “a willful and wanton disregard for the safety of persons or - property” is clearly not the same as taking a substantial step toward recklessly killing someone. Initially, I note that this court has never before found “a willful and wanton disregard” for purposes of driving misdemeanors, a concept borrowed from tort law and signifying a . kind of extreme or aggravated negligence, to be indistinguishable from the criminal mens rea of recklessness, and doing so, as the majority conclusorily does in this case, I consider substantially problematic in itself. More importantly, however, .reckless driving is committed by disregarding the safety of persons or property — not by disregarding a substantial risk of killing someone. Clearly, nothing in our jurisprudence prohibits more severe punishment for disregarding a risk of more serious injury. ¶61 The import of the majority rationale appears to be that there can be no risk of causing the death of another person without reference to a particular victim. But as a matter of law and logic, this is clearly not the case. With regard to the scenario of this case, out-of-control driving at a time and place the defendant knows to be heavily populated by pedestrians or other drivers could clearly be found to amount to the conscious disregard of a substantial and unjustifiable risk that by his' out-of-control driving he will cause the death of a pedestrian or other driver. Whether or not a particular pedestrian or driver fortuitously comes within range of actually being hit does not alter the substantial and unjustifiable risk of which he was aware and which he consciously disregarded when he chose to drive drunk on heavily populated roads. ¶62 A number of factors. are, relevant to the question whether the defendant attempted to commit the crime of recklessly causing the death of another, but whether someone in particular came close to being run over by him is not one of them. Even the actual presence of a discernible person could add nothing concerning the defendant’s awareness and disregard of a, substantial and unjustifiable risk when he decided, to drive drunk. And in this specific case, while there may be merit in questioning the sufficiency of the evidence proving the defendant’s awareness of a substantial risk that he would encounter others in his path on the nights and in the locations in question, and would likely be unable to avoid hitting and killing them, or even the probativeness of the evidence informing the jury of his prior drunk driving convictions, nothing in our attempt statute justifies imputing a requirement that he endanger a discernible person. ¶63 Even if it were within our purview to add such a requirement to the statutes defining attempt liability for reckless manslaughter, I would therefore find it unnecessary to do so. Instead, I fear that the lasting impact of today’s holding will be merely to undermine the conceptual framework for attempt liability under which we have long operated and reopen a number of questions seemingly long laid to rest. ¶64 I therefore respectfully dissent. I am authorized to state that JUSTICE BOATRIGHT joins in this dissent.